# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHAQUON CARTER,               :
       Plaintiff,           :           **CIVIL ACTION NO.:**
                              :
v.                         :           **3:14-cv-1553 (VLB)**
                              :
DR. REVINE, et al.,          :           **October 6, 2015**
       Defendants.        :

## INITIAL REVIEW ORDER

Plaintiff Shaquon Carter, pro se and incarcerated at the Corrigan Correctional Institution in Uncasville, Connecticut, brings this 42 U.S.C. § 1983 complaint seeking monetary damages for purported violations of his Eighth Amendment rights.  His claims arise out of an inmate altercation during which he was maced and sustained a thumb fracture necessitating surgery and the prison staff's failure to treat his injuries.  His complaint names Defendants Dr. Revine, Captain Watson, Correctional Officer Omeara, Deputy Warden Walker, Lieutenant Stewart, and Captain Guzman.  The Court has already granted Carter's motion to proceed *in forma pauperis* and now conducts its initial review pursuant to 18 U.S.C. § 1915A.  For the following reasons, the Court allows the claims against Defendants Revine, Watson, Walker, and Guzman to proceed and grants Carter leave to amend his complaint so that he may plausibly suggest claims for deprivation of property, excessive force, and deliberate indifference to his safety; identify how the remaining two defendants acted with deliberate indifference to his serious medical needs; and name any new defendants who also may have been involved but who are not specifically named in the caption.

## Factual Background

Carter's complaint contains the following factual allegations, which are assumed to be true.  ECF No. 1.  On March 6, 2014, Carter and another inmate got into an altercation.  *Id.* at ¶ 1.  After being maced and separated, Carter was brought to segregation where he was seen by a nurse, who Carter does not identify in his complaint.  *Id.* at ¶¶ 1–3.  Without providing any treatment, that nurse "waved [Carter] off as fine," despite the fact that Carter told her that his thumb might be broken.  *Id.* at ¶¶ 3–4.  On the same day, a substantial amount of Carter's property was missing.  *Id.*  Carter told various correctional officers, who Carter does not identify in his complaint, that his property was missing and that his hand required treatment.  *Id.* at ¶ 5.  A nurse, who Carter does not identify in his complaint, told Carter to request to sick call.  *Id.* at ¶ 6.  Carter wrote to medical on the same day.  *Id.* at ¶ 8.  Carter also told Defendant Captain Watson about his "issue/situation," but Watson just ignored him.  *Id.* at ¶ 7.

On March 7, 2014, Carter asked several correctional officers, who Carter does not identify in his complaint, to call the medical unit.  *Id.* at ¶ 9.  Carter also asked a nurse doing rounds, who Carter does not identify in his complaint, for an ice pack and pain medication, but the unidentified nurse told him to submit a sick call request.  *Id.* at ¶ 10.  Carter submitted a second written request.  *Id.* at ¶ 12.  On March 8, 2014, Carter continued to request medical treatment from correctional officers, correctional treatment officers, and nurses, who Carter does not identify in his complaint.  *Id.* at ¶ 13.  For example, he showed his swollen

hand to a nurse, and she told him that she would check to see if he was scheduled to be seen by the medical department in response to his requests. *Id.* at ¶ 14. The nurse never returned to see Carter. *Id.*

On March 10, 2014, Carter gave written sick call requests to Defendant Correctional Officer Omeara and Correctional Treatment Officer Deko, who Carter does not identify in the caption of his complaint. *Id.* at ¶ 16. Deko told Carter that she would put the request in the sick call box. *Id.* Before the end of the day, Carter asked a correctional officer, who Carter does not identify in his complaint, to call the medical unit. *Id.* at ¶ 17. A nurse, who Carter does not identify in his complaint, came to the cell block and told Carter and Defendant Omeara that Carter's thumb was not a medical emergency. *Id.* Carter asked Defendant Omeara to call the mental health unit. *Id.* Carter also spoke to Defendant Lieutenant Stewart, explaining his situation and giving her a sick call request. *Id.* at ¶ 18. While talking with Defendant Stewart, a nurse asked Carter if he was going to hurt himself. *Id.* at ¶ 19. Carter told the nurse no, and Defendant Stewart said, "that[']s how they do." *Id.*

On March 11, 2014, Carter spoke with Ms. Mathews, who he does not identify in the caption of his complaint, about his concerns with his property and his hand, and Ms. Matthews documented Carter's complaints. *Id.* at ¶ 20. However, Carter received no medical treatment. *Id.* at ¶ 21. On March 12, 2014, Carter told nurses, who Carter does not identify in his complaint, about his problems and showed them his hand. *Id.* at ¶ 22. One of those nurses told Carter

3

that she would talk to someone in medical for him. *Id.* However, the nurse later told Carter that medical does not have anything for him. *Id.* at ¶ 23. Carter also spoke with Cov, who he does not identify in the caption of his complaint, to see whether Matthews documented his complaint and whether Matthews had spoken to medical about his concerns. *Id.* at ¶ 24. Cov told Carter that his complaint had been documented but that he did not know if Matthews spoke to medical on Carter's behalf. *Id.* Carter also spoke with Deko, and Deko told Carter that medical had not received his requests even though Deko had placed them there as requested. *Id.* at ¶ 25. Carter continued to plead with nurses and correctional officers, who Carter does not identify in his complaint, about his hand, but Carter continued to be handcuffed on his way to the showers despite that his hand's large swelling. *Id.* at ¶ 26.

On March 13, 2014, Carter explained his situation to Defendants Captain Guzman and Deputy Warden Walker as well as Mauvinchi, who he does not identify in the caption of his complaint, but all three prison officials did nothing to help Carter. *Id.* at ¶ 27. On March 14, 2014, Carter filed another written medical request form and showed "somebody" his hand, but Carter still received no treatment. *Id.* at ¶¶ 29–30. On March 15, 2014, Carter received pain medication from a nurse, who Carter does not identify in his complaint, but she told him that he could not have an ice pack and that she did not know when he could see a doctor. *Id.* at ¶ 31. Carter received pain medication on the following day. *Id.* at ¶ 33.

4

On March 17, 2014, Carter spoke with Hadlock, who Carter does not identify in the caption of his complaint, and Hadlock told him that he would speak to medical. *Id.* at ¶ 34. Nothing was done. *Id.* Carter then filed another written sick call request and a medical grievance, which were addressed to Defendant Walker and submitted to Deko. *Id.* at ¶ 35–36. Carter also spoke with Nurse Beth, who he does not identify in the caption of his complaint, and she checked the chart and came back with pain medication. *Id.* at 37–38.

On March 18, 2014, Carter saw Defendant Dr. Revine, who sent Carter for x-rays. *Id.* at ¶ 39. After reviewing the results, Dr. Revine told Carter that his thumb was fractured and required surgery. *Id.* Carter received a bandage and pain medication. *Id.* The following day, March 19, 2014, Carter received more pain medication and was transferred to another correctional facility. *Id.* at 39–40. In April 2014, Carter was told by a doctor, who he does not identify in his complaint, that it was too late for surgery because the bone had already started healing. *Id.* at ¶ 43. Carter continues to suffer from hand pain and is still awaiting medical treatment. *Id.* at ¶ 45.

## Discussion

This Court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, this Court must dismiss the complaint, or any portion thereof, if the complaint fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b). However, "[a] *pro*

5

*se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks and alterations omitted).  An amended complaint is rightfully dismissed when it fails to cure the defects noted in an initial review order.  *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal without leave to amend of pro se complaint for failure to state a claim because plaintiff did not fix defects noted in initial dismissal order granting leave to amend).

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When reviewing a complaint for facial plausibility, a district court must "accept[ ] all factual allegations as true and draw[ ] all reasonable inferences in favor of the plaintiff." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).  Courts should read a pro se complaint with "special solicitude" and interpret the complaint "to raise the strongest claims that it suggests." *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and alterations omitted).

6

I.    **Lost Property Claims**

Carter alleges that his property went missing on March 6, 2014 and that his complaints about his missing property went unaddressed despite various complaints to some defendants and other unidentified individuals.   With the exception of irreplaceable legal documents, even the intentional destruction of a prisoner's property does not support a cognizable claim if the state provides an adequate post-deprivation remedy.   *See Hudson v. Palmer,* 468 U.S. 517, (1984). Connecticut provides its inmates with a post-deprivation remedy, *see Edwards v. Erfe*, 588 F. App'x 79 (2d Cir. 2015) (discussing procedures for the return of property), and Carter does not allege any facts suggesting that this remedy is constitutionally deficient.   Such a claim as currently pleaded therefore fails to state a claim, but in the abundance of caution, the Court affords Carter the opportunity to raise such a challenge in amended complaint.   *Id.* (observing that the district court arguably erred in dismissing pro se inmate's missing property challenge without leave to amend).   Any amendment should also identify a state actor responsible for the missing property.

II.    **Excessive Force Claims**

The Eighth Amendment prohibits a prison official from using excessive force against an inmate.  The salient inquiry asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."   *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  When addressing this inquiry, a court should "evaluate the need for application of force, the

relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.*  In other words, context matters: in some circumstances, deadly force may not be constitutionally excessive, *Whitley v. Albers*, 475 U.S. 312, 322–26 (1986) (use of shotgun during hostage situation did not violate Eighth Amendment), and in other circumstances, being sprayed with liquids, or even a significant push, may be constitutionally excessive, *see Hogan v. Fischer*, 738 F.3d 509, 515–17 (2d Cir. 2013) ("spraying an inmate with a mixture of feces, vinegar, and machine oil"); *Abreu v. Nicholls*, 368 F. App'x 191, 194 (2d Cir. 2010) ("corrections officer used a weapon . . . and pressed it against [the plaintiff's] head with sufficient force to bend his head half way backwards"  (internal quotation marks omitted)).

Here, Carter alleges that correctional officers used mace to breakup an inmate altercation.  The use of mace constitutes more than *de minimus* force, but Carter alleges no facts that would permit the Court to infer that the use of mace was excessive in the context of his altercation with another inmate; it would depend on factual circumstances entirely absent from the complaint.  Carter also does not allege whether his broken finger was caused by the other inmate or one of the corrections officers who interceded.   Finally, Carter does not identify which correctional officers broke up in the altercation.  Without these facts, the complaint does not state a plausible excessive force claim against an identifiable state actor.   However, additional facts may suggest a plausible claim.

Accordingly, the Court grants Carter an opportunity to amend for the purposes of attempting to plead an excessive force claim.

III.   <u>Deliberate Indifference Claims</u>

The Eighth Amendment also prohibits a prison official from acting with "deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).   The test applies whether the risk of harm relates to an inmate's medical condition or the conditions of confinement. *Wilson v. Seiter,* 501 U.S. 294, 303–04 (1991).   Deliberate indifference has two components: the first of which is objective and the second of which is subjective. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The objective component requires that the risk of harm be "sufficiently serious," *id.*, and is evaluated according to "contemporary standards of decency," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A risk of sufficiently serious harm is sufficient: "one does not have to await the consummation of threatened injury to obtain preventative relief."   *Farmer*, 511 U.S. at 845 (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, *593* (1923)) (alteration omitted).   An inmate's medical need is sufficiently serious where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  An inmate's conditions of confinement present a sufficiently serious risk of harm when those conditions fail to ensure "reasonable safety."  *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  A prisoner is not reasonably safe if, as a result

of personal characteristics or past threats, he is likely to be a victim of physical or sexual assault.  *See*, *e.g., Farmer*, 511 U.S. 825 (nonviolent, young, feminine-appearing transgender prisoner in general population of high-security prison); *Henricks v. Coughlin*, 942 F.2d 109, 110–111 (2d Cir. 1991) (inmate intimidated by other inmates and sought protection from prison officials saying he was concerned about his safety).

With respect to the subjective component, an official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  With respect to medical claims, "a mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703.  To be held liable, a defendant must have "personal involvement," i.e.:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (quotation marks and emphasis omitted).

A.    Deliberate Indifference to Personal Safety

Liberally construed, Carter alleges that his Eighth Amendment rights were violated because unidentified officers acted with deliberate indifference to his

10

personal safety.    However, the only factual allegations pertaining to such a claim are that Carter was involved in an altercation with another inmate and as a result fractured his thumb (although the complaint does not clearly indicate whether his thumb was fractured by the inmate or the correctional officers who interceded). When coupled with other relevant facts, such a claim could support a plausible failure-to-protect claim, but, as currently pleaded, his complaint does not allege who had a duty to protect him from being involved in an altercation and how that prison official was deliberately indifferent with respect to his or her duty to do so. Accordingly, the Court grants Carter leave to amend his complaint for purposes of attempting to plead a failure-to-protect claim.

### B.    Deliberate Indifference to Serious Medical Needs

Carter also attempts to hold the defendants liable on the basis that they acted with deliberate indifference to his fractured thumb.  Although courts in this Circuit have ruled that broken fingers do not constitute a serious medical need, *see Gaines v. Okpok*, 2006 WL 1652654, at *4 (E.D.N.Y. June 9, 2006); *Rivera v. Johnson*, 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996), these cases are distinguishable where, as here, a reasonable doctor finds the injury worthy of treatment and the failure to provide such treatment causes significant pain.  *See Chance*, 143 F.3d at 702 (ruling that prisoner adequately pleaded an Eighth Amendment claim where he alleged that the failure to treat a tooth ache caused him severe pain).  As alleged here, when Carter saw Defendant Ravine two weeks after fracturing his finger, Defendant Ravine believed that his injury necessitated

surgery and that the initial and subsequent delays in providing such treatment caused Carter's hand to heal awkwardly, resulting in continued pain.

The problem, however, is which defendants, if any, acted with deliberate indifference to his serious medical need.  With the exception of Dr. Levine, none of the named defendants are medical professionals and as layman, would not have been able discern whether Carter's injury necessitated surgery.   Their deliberate indifference stems from their failure to put Carter in contact with a medical professional who would then be able to make an informed judgment concerning the appropriate course of treatment.   But Defendant Omeara deposited Carter's sick call requests, and Defendant Stewart was present when a nurse determined that Carter's injury was not worthy of treatment.  Nothing about the facts as pleaded suggest that any more immediate action would have been necessary.  Accordingly, the complaint fails to state a claim against these two defendants.  However, the Court provides Carter an opportunity to amend his complaint so that he may add new facts suggesting that these defendants intentionally shirked their duty to get Carter immediate medical attention.

As to the other three nonmedical defendants, Defendants Watson, Walker, and Guzman, Carter alleges that they either blatantly ignored his written or oral complaints concerning his need to see a medical professional about his fractured thumb.  These defendants' failure to take any action whatsoever, not even so much as to suggest the appropriate procedure for obtaining medical care from a medical professional, suggests a plausible deliberate indifference claim.

Accordingly, the complaint plausibly suggests claims against these three defendants.

As to Dr. Ravine, the Court rules that his deliberate indifference is plausibly suggested by his failure to follow up with Carter's care, resulting in an awkwardly healed fracture and continued pain.  Medical care for all state inmates is provided through a memorandum of understanding between the Connecticut Department of Corrections and the University of Connecticut Health Center.  As a result, there should be continuity of care even when an inmate is relocated from one correctional facility to another.  Even if that were not true, the original treating physician has a responsibility to transmit essential diagnostic information necessary to ensure that critical treatment is provided to the patient because the patient does not have the ability to do so himself.  Accordingly, the complaint states a plausible claim for deliberate indifference to his serious medical need against Dr. Ravine.

The complaint references other unidentified and identified individuals who were not named in the caption of the complaint.  The Court cannot ascertain whether the failure to name these defendants was intentional or merely the result of understandably inartful pleading.  If Carter would like to sue these defendants, he should submit an amended complaint naming these defendants in the caption. To the extent that he does not know their names, he should identify them as Doe Defendants.  Any amended complaint shall be filed within thirty-five days from the date of this order.

13

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

1.    If Carter wishes to file an amended complaint, he must do so within thirty-five (35) days from the date of this order.

2.    The Clerk shall verify the current work address of Defendants Revine, Watson, Walker, and Guzman with the Department of Correction Office of Legal Affairs, and mail a waiver of service of process request packet to each defendant at the confirmed address within twenty-one (21) days from the date of this Order.  The Clerk shall report to the court on the status of that waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

3.    The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

4.    Defendants Revine, Watson, Walker, and Guzman shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver form is sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim

recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

5.     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this Order.  Discovery requests need not be filed with the court.

6.     All motions for summary judgment shall be filed within eight months (240 days) from the date of this Order.

7.     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

8.     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

**IT IS SO ORDERED.**

                        **_____/s/_____**
                        **Vanessa L. Bryant**
                        **United States District Judge**

**Dated at Hartford, Connecticut, October 6, 2015.**